IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KELLY LYNN FRANCIS,          )
                                           )
            Plaintiff,         )
                                           )
       v.                 ) Civil Action No. 17-1209-CFC
                                           )
NANCY A. BERRYHILL, Acting   )
Commissioner of Social Security,   )
                                           )
            Defendant.   )

## MEMORANDUM OPINION

Kelly Lynn Francis, Bethany Beach, Delaware; Pro Se Plaintiff.

Eric P. Kressman, Regional Counsel, Region III, and Annie Kernicky, Assistant Deputy Regional Counsel, Office of the Regional Chief, Social Security Administration, Philadelphia, Pennsylvania; David C. Weiss, United States Attorney for the District of Delaware, Wilmington, Delaware; Heather Benderson, Special Assistant United States Attorney, Office of the General Counsel, Philadelphia, Pennsylvania, Attorneys for Defendant.

March 1st, 2019
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

Plaintiff, Kelly Lynn Francis ("Plaintiff"), who appears *pro se*, appeals the decision of Defendant Nancy A. Berryhill ("Commissioner"), Acting Commissioner of Social Security, denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1381-1383f. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Pending before the Court are cross motions for summary judgment filed by Plaintiff and the Commissioner. (D.I. 19, 20). Plaintiff has requested a hearing. (D.I. 26). Briefing is complete.

## I. BACKGROUND

### A. Procedural and Factual Background

Plaintiff filed for SSI benefits on April 29, 2014, alleging disability as of January 2, 2004 due to bipolar disorder, depression, impulse control disorder, and dysthymia. (D.I. 10-4 at 2; 10-6 at 2-7). Plaintiff was born on November 14, 1968 (D.I. 10-6 at 2) and at all relevant times is considered a "younger person" under the Social Security Act. *See* 20 C.F.R. § 416.963(c). Plaintiff left school after sixth grade (D.I. 10-2 at 83), and her education is defined as marginal under the regulations. *See* 20 C.F.R. § 416.964(b)(2).

Plaintiff's application was denied initially on August 14, 2014, and upon reconsideration on October 3, 2014. (D.I. 10-4 at 2-24). She requested an administrative hearing before an Administrative Law Judge ("ALJ"), and it was held on June 20, 2016. (D.I. 10-3 at 77-108). Testimony was provided by Plaintiff and vocational expert ("VE") Marilyn Stroud. The ALJ issued a decision on July 1, 2016, finding that Plaintiff was not disabled. (D.I. 10-2 at 63-71). She sought review by the

1

Appeals Council, submitted additional evidence, and her request was denied on August 3, 2017, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 2-5). On August 25, 2017, Plaintiff filed this action seeking review of the final decision. (D.I. 2).

### B. Plaintiff's Testimony

Plaintiff lives alone. (D.I. 10-2 at 90, 93, 101). She completed the sixth grade and can write a little and read a little but does not read books. (D.I. 10-2 at 83, 97-99). She can do simple math and make change. (*Id*. at 98). She has a driver's license. (*Id*. at 86). She takes the trolley to physician visits. (*Id*. at 86-87). She does her own shopping but does not cook. (*Id*. at 86, 100). She uses the microwave. (*Id*. at 100). Plaintiff takes care of her personal hygiene and has no trouble dressing herself. (*Id*.).

She is able to keep the house clean and cleans the bathroom and kitchen daily. (*Id*. at 93-93). Plaintiff explained she has OCD and awakens at 2:00 to clean the kitchen, the bathroom, and returns to clean either the kitchen or the bathroom or something she has already cleaned. (*Id*. at 93-94).

Plaintiff testified that in 2004 she worked at a Starbucks serving coffee. (D.I. 10-2 at 82). She was fired due to anger issues. (*Id*. at 83). She looked for other work after that and was employed for one week before being fired for arguing and fighting. (*Id*. at 84-85).

Plaintiff testified that she has no friends since her parents died, and her husband does not live with her because he could no longer deal with her. (*Id*. at 85). Plaintiff testified that during the past several years when her parents had become ill she helped care for them before they died. (*Id*. at 91-92). She pushed her father in a wheelchair

2

and bathed and fed her mother. (*Id.* at 92). Plaintiff testified that she "got frustrated with her mother and would scream at her. (*Id.*). Plaintiff explained she became frustrated easily and gave the example of being unable to find something. (*Id.* at 93).

Plaintiff sees a psychiatrist for her mental health conditions of depression, explosiveness, and repetitive activities such as cleaning. (*Id.* at 87-88). Plaintiff testified that she has anxiety which "makes [her] have like panic attacks a little bit." (*Id.* at 96). She is on a number of medications including Klonopin, Lamictal, and Oxcarbazepine. (*Id.* at 88). Plaintiff testified that the medications do not really help. (*Id.* at 89). Sometimes the medications cause her to be jittery, nauseous, and hyper. (*Id.* at 89). Plaintiff testified that she sleeps 16 hours a day because depression takes over. (*Id.* at 90). She testified that her concentration is not very good but explained it is more of a memory problem. (*Id.* at 96). When questioned more, she indicated she did not have a concentration problem. (*Id.* at 97).

Plaintiff testified that she stays home every day and has stayed at home for "months." (*Id.* at 95). She testified she has missed doctors' appointments and she procrastinates. (*Id.*). She testified that when she leaves her home she worries about what is going on there. (*Id.* at 96). Plaintiff tried working from home but that did not work out because she "got frustrated with it" and agitated. (*Id.* at 96).

Plaintiff testified that she did not think she could work as a caretaker or a sitter because she gets frustrated and mad. (*Id.* at 92). Plaintiff testified that she did not think she could clean for a living because she does not get along with other people. (*Id.* at 94). When asked if she could clean for a living if she cleaned with no one

3

around, Plaintiff answered, "I don't think so," but did not know why and then testified that she did not like to leave her home. (*Id.* at 94). Plaintiff testified that she could not work at Starbucks again because she does not get along well with other people. (*Id.* at 98).

### C. Plaintiff's Medical History, Condition, and Treatment

Plaintiff began treatment with Shashikala Venkatachalapathy, M.D. ("Dr. Venkatachalapathy") on February 19, 2014. (D.I. 10-9 at 3, 5-6). At that time Plaintiff indicated she had been depressed, irritable, and had been having mood swings. (*Id.* at 3). She reported that she had been having panic attacks that brought her to the emergency room three to four times in the past couple months. (*Id.* at 5). Dr. Venkatachalapathy noted that Plaintiff was negative for aggressive verbal or physical behavior. (*Id.*). She observed Plaintiff was fully oriented, alert, focused and cooperative; and had good hygiene, normal thought content and cognition, good insight, good judgment, and above average intelligence by estimate, despite having rapid speech and a depressed and anxious mood. (*Id.* at 6). Dr. Venkatachalapathy diagnosed Plaintiff with bipolar disorder, impulse control disorder unspecified, and intermittent explosive disorder, and she prescribed medication. (*Id.*).

When Dr. Venkatachalapathy saw Plaintiff on March 12, 2014, she added the diagnosis dysthymic disorder, but the diagnosis was omitted at later visits. (*Id.* at 8). Her symptoms remained the same, but Plaintiff had stopped taking the medication because she felt too tired and lethargic when taking them. (*Id.* at 7). Dr. Venkatachalapathy saw Plaintiff on a somewhat regular basis, occasionally adjusted

Plaintiff's medications, and made consistent observations regarding Plaintiff's mental status, which included that Plaintiff had good hygiene and that Plaintiff was cooperative and focused. (D.I. 10-9 at 7-12, 45-50; D.I. 10-14 at 17; D.I. 10-15 at 55).

Dr. Venkatachalapathy completed a mental functional capacity assessment on July 2, 2014, and diagnosed Plaintiff with bipolar disorder and intermittent explosive disorder, fair prognosis. (D.I. 10-9 at 14-16). In the area of sustained concentration and persistence, Dr. Venkatachalapathy assessed marked limitations in Plaintiff's ability to work in coordination with or in proximity to coworkers, supervisors, or the general public, and in the area of social interaction Dr. Venkatachalapathy assessed marked limitation in Plaintiff's ability to respond appropriately to criticism. (*Id*. at 14-15). She opined the conditions were long term, but undiagnosed and untreated. (*Id*. at 16).

On August 5, 2014, Plaintiff underwent a consultative examination performed by Margaret Goodwin, Ph.D. ("Dr. Goodwin"). (D.I. 10-9 at 17-23). Dr. Goodwin diagnosed Plaintiff with bipolar II disorder and ruled out obsessive compulsive personality disorder. (*Id*. at 23). Dr. Goodwin opined that Plaintiff had mild to moderately severe impairments as follows: mild in the ability to understand simple, primarily oral, instructions; moderate in the restriction of daily activities; and moderately severe in the ability to relate to other people, carry out instructions under ordinary supervision, sustain work performance and attendance in a normal work-setting, cope with pressures of ordinary work, and perform routine, repetitive tasks under ordinary supervision. (*Id*. at 18-19).

Plaintiff described symptoms of anxiety and depression, trouble staying focused, frequent mood swings, and anxiety attacks one or twice a week. (*Id*. at 21). She indicated she had been diagnosed with bipolar disorder and obsessive compulsive disorder. (*Id*.). Dr. Goodwin reported that Plaintiff scored at the clinically significant level in the areas of anxiety/depression, attention problems, thought problems, aggressive behavior, somatic complaints, withdrawal, rule-breaking behavior, and intrusiveness. (*Id*. at 22). Dr. Goodwin noted that Plaintiff's scores were inconsistent with other self-reported information and likely reflected symptom exaggeration. (*Id*.).

Dr. Goodwin observed that Plaintiff was cooperative throughout the evaluation and had unremarkable attention and concentration, patent recent and remote memory, borderline practical judgment, and low-average intelligence. (*Id*. at 23). She recommended that Plaintiff continue with mental health treatment and stated, "her current prognosis for adequate functioning in a regular workday environment is moderate, contingent upon her willingness to pursue corrective measures." (*Id*. at 23).

Two state agency psychological consultants, Maurice Prout, Ph.D. ("Dr. Prout") and Carlene Tucker-Okine, Ph.D. ("Dr. Tucker-Okine"), reviewed Plaintiff's record and opined as to her limitations relating to her mental impairments. (D.I. 10-4 at 5-9, 16-22). Dr. Prout reviewed the record at the initial stage and determined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (*Id*. at 6). He did not identify any episodes of decompensation. (*Id*.). Dr. Prout opined that Plaintiff was limited to performing simple tasks with only occasional

interaction with the general public, supervisors, and coworkers. (*Id.* at 7-8). Dr. Tucker-Okine assessed the same limitations upon reconsideration. (*Id.* at 16-21).

Dr. Venkatachalapathy completed a mental functional capacity assessment on May 11, 2015. (D.I. 10-9 at 41-43). She opined that Plaintiff's symptoms of emotional lability, mood swings, poor frustration toleration, and poor anger control would frequently interfere with her attention and concentration. (*Id.* at 38). She assessed Plaintiff as having minimal limitations in maintaining attention and concentration for extended periods of time and no or minimal limitations in sustained concentration and persistence. (*Id.* at 41-42). She opined that Plaintiff had marked limitations in certain areas of social functioning. (*Id.*).

In a November 2015 letter "to whom it may concern," Dr. Venkatachalapathy wrote that she seen had been seeing Plaintiff since February 2014 for medication management and that Plaintiff carried the diagnoses of bipolar disorder and intermittent explosive disorder. (*Id.* at 44). Dr. Venkatachalapathy noted that Plaintiff reported a history of mood swings and poor frustration tolerance that contributed to poor social/interpersonal relationships and that Plaintiff had been unable to keep jobs due to her mood instability. (*Id.*).

Dr. Venkatachalapathy completed another mental functional capacity assessment on April 27, 2016. (D.I. 10-14 at 23-44). She assessed Plaintiff as having moderate limitations in understanding and remembering short and simple instructions and marked limitations in understanding and remembering detailed instructions. (*Id.* at 23). She assessed Plaintiff as having marked limitations in maintaining concentration and attention

7

and marked or severe limitations in areas of social functioning. (*Id.* at 23-24). She

opined that Plaintiff would need four-plus absences in an average month. (*Id.* at 24).

### D. Vocational Expert's Testimony

The VE testified at the administrative hearing. (D.I. 10-2 at 103-107). She

characterized Plaintiff's past work at Starbucks as a waiter/waitress. (*Id.* at 104). The

VE was asked to assume whether

> an individual of the claimant's age, education and work history who can
> perform work at all exertion levels, performing simple, unskilled tasks with
> no fast-paced or strict production requirements in a stable work
> environment with only occasional changes, with occasional interaction
> with coworkers that does not require teamwork or tandem tasks, and no
> interaction with the public

could perform Plaintiff's past work. (*Id.*). The VE replied "No." (*Id.*). When asked

whether there were other jobs the person could perform, the VE indicated the person

could perform jobs such as a laundry classifier, a seconds handler, and a small parts

assembler -- all classified as light exertion jobs with a skill level of 2 and all available in

the national economy. (*Id.*). The VE testified that the hypothetical person would not

be able to perform competitive work if the person was off task 20 % of the work day

because of the impact of psychological systems, and the VE further testified that if the

same person missed two days per months because of psychological impairments the

person would be unable to keep the job in a competitive work environment, and it would

be grounds for termination. (*Id.* at 105). Finally, the VE testified that if the person

needed reminders of job tasks twice a day the person would be unable to do past work

or other work in a competitive work environment. (*Id.* at 107).

## II.    LEGAL STANDARD

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."   *See* 42 U.S.C. § 405(g); *see Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).   Substantial evidence does not mean a large or a considerable amount of evidence.   *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   Rather, it has been defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate."   *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Credibility determinations are the province of the ALJ.   *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).   They should be disturbed on review only if they are not supported by substantial evidence.   *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001).

## III.    REGULATORY FRAMEWORK

Within the meaning of social security law, a "disability" is the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months.   *See* 42 U.S.C. §1382c(a)(3).   To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy."   *See* 20 C.F.R. § 416.905.   The claimant bears the initial burden of proving disability.   *See* 20 C.F.R. § 416.905;

9

*Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984). To qualify for disability insurance benefits, the claimant must establish that she was disabled prior to the date she was last insured. *See* 20 C.F.R. § 416.912(a); *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

To determine disability, the Commissioner uses a five-step sequential analysis. *See* 20 C.F.R. § 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Smith v. Commissioner of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 416.920(a)(4)(ii) (requiring finding of not disabled when claimant's impairments are not severe). If claimant's impairments are severe, at step three the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe

enough to preclude any gainful work.[1]  See 20 C.F.R. § 416.920(a)(4)(iii); Plummer,

186 F.3d at 428.  When a claimant's impairment or its equivalent matches an

impairment in the listings, the claimant is presumed disabled.  See 20 C.F.R. §

416.920(a)(4)(iii).  If a claimant's impairment, either singly or in combination, fails to

meet or medically equal any of the listings, the analysis continues to steps four and five.

See 20 C.F.R. § 416.920(e).[2]

At step four, the Commissioner determines whether the claimant retains the

residual functional capacity ("RFC") to perform her past relevant work.  See 20 C.F.R. §

416.920(a)(4)(iv) (stating a claimant is not disabled if able to return to past relevant

work).  "The claimant bears the burden of demonstrating an inability to return to her

past relevant work."  Plummer, 186 F.3d at 428.  If the claimant is unable to return to

her past relevant work, step five requires the Commissioner to determine whether the

claimant's impairments preclude her from adjusting to any other available work.  See

20 C.F.R. § 416.920(g) (mandating that a claimant is not disabled if the claimant can

adjust to other work); Plummer, 186 F.3d at 428.  As previously stated, at this last step

the burden is on the Commissioner to show that the claimant is capable of performing

other available work before denying disability benefits.  See id.  In other words, the

---

[1] Additionally, at steps two and three, claimant's impairments must meet the duration requirement of twelve months.  See 20 C.F.R. § 416.920(a)(4)(ii-iii).

[2] Prior to step four, the Commissioner must assess the claimant's RFC.  See 20 C.F.R. § 416.920(a)(4).  A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment[s]." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

11

Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC.]" *Id.* This determination requires the Commissioner to consider the cumulative effect of the claimant's impairments, and a vocational expert is usually consulted.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2014, the application date. (D.I. 10-2 at 65). At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder, intermittent explosive disorder, and impulse disorder. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any of the impairments in the Listing of Impairments. (*Id.*). The ALJ found that Plaintiff has

> the residual functional capacity to perform the full range of work at all
> exertional levels of work[3] but with the following nonexertional limitations:
> she can perform simple, unskilled tasks[4] with no fast pace or strict
> production requirements in a stable work environment with only occasional
> changes; there can be occasional interaction with coworkers that does not
> require teamwork or tandem tasks; and there can be no interaction with
> the public.

(*Id.* at 67). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 70). The ALJ consulted a vocational expert and, at step five,

---

[3] This includes very heavy work, heavy work, medium work, light work, and sedentary work. See 20 C.F.R. § 404.1567.

[4] Plaintiff's marginal education is sufficient to perform simple, unskilled work under the regulations. *See* 20 C.F.R. § 416.964(b)(2).

relied upon the VE's testimony that jobs existed in the national economy Plaintiff would be able to perform such as laundry classifier, seconds handler, and small parts handler. (*Id*. at 70-71). Therefore, the ALJ determined that Plaintiff had not been not under a disability since March 31, 2014, the date the application was filed. (*Id*. at 71).

## IV. DISCUSSION

Plaintiff filed her Complaint *pro se*. Therefore, the Court must liberally construe her pleadings, and "apply the applicable law, irrespective of whether she has mentioned it by name." *Holley v. Department of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999); *see also Leventry v. Astrue*, 2009 WL 3045675 (W.D. Pa. Sept. 22, 2009) (applying same in the context of a social security appeal).

Plaintiff does not point to any error by the ALJ. However, she states that current medical records she provides the Court clearly indicate that due to mental illness and the medication she takes it is not safe for her to work in any environment. (D.I. 19 at 2). Plaintiff refers to her very minimal education and panic and anxiety attacks that are increasing in severity in asking the Court to award disability benefits. In addition, she argues that the assessments of Dr. Venkatachalapathy and Dr. Goodwin support a finding of disability. In her reply brief, Plaintiff also refers to the worsening of her condition and provides 2018 medical records.[5] (D.I. 22, D.I. 23).

---

[5] To the extent Plaintiff contends her condition has worsened, the appropriate remedy is to file a new disability application. *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 712 (6th Cir. 1988) (if claimant's condition seriously degenerated to the point of constituting a disabling impairment, the appropriate remedy is to initiate a new claim for benefits as of the date the condition became disabling).

The Commissioner argues that substantial evidence supports the ALJ's decision that Plaintiff was not disabled under the Act. The Commissioner argues that the ALJ properly followed the five-step sequential analysis process outlined in the Social Security Regulations, the ALJ considered all the evidence, sought testimony from a VE, and relied upon that testimony in finding that Plaintiff is capable of performing a significant number of jobs in the national economy which constitutes substantial evidence of non-disability.

## A.    Substantial Evidence

The final responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner. *See Breen v. Commissioner of Soc. Sec.*, 504 F. App'x 96 (3d Cir. 2012) (citing 20 C.F.R § 404.1546(c)). Here, the ALJ considered the effects of Plaintiff's condition in relation to her ability to perform work. It is clear in reading the ALJ's decision that he thoroughly reviewed and considered the medical records submitted.

The ALJ found that Plaintiff had multiple severe impairments including bipolar disorder, intermittent explosive disorder, and impulse disorder. These conditions were diagnosed by Plaintiff's treating psychiatrist. The ALJ considered the severe impairments singly, and in combination, and determined at step three that Plaintiff's impairments failed to meet or medically equal any of the Listings. (*See* D.I. 10-2 at 65-66); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (The Listings define impairments that would prevent an adult from performing any gainful activity, not just substantial gainful activity).

14

The ALJ considered Plaintiff's mental impairments under Listings 12.04, affective disorders, and 12.08, personality disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.08. Under Listing 12.04, a claimant must satisfy the criteria outlined in paragraphs A and in either paragraph B or paragraph C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Under Listing 12.08, a claimant must satisfy the criteria outlined in paragraph A and the criteria outlined in paragraph B. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08. Paragraph A criteria relate to medical findings; Paragraph B criteria relate to impairment-related functional limitations; Paragraph C criteria relate to additional functional limitations.

As the ALJ explained in his analysis, in order to satisfy the paragraph B criteria of Listing 12.04 and 12.08, Plaintiff's impairments had to result in at least two of four of the following limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (D.I. 10-2 at 65). The ALJ adequately discussed Plaintiff's various symptoms and her treatment, and ultimately found that the above-stated requirements were not met or medically equaled. The ALJ clearly and thoroughly addressed each of the above elements and concluded that Plaintiff's limitations included mild restrictions in activities of daily living. In this regard, the ALJ considered the fact that although Plaintiff testified that she slept a lot, she performed household chores, prepared simple meals, cared for her pet, cared for her ailing parents, drove sometimes, grocery shopped, ran errands, and maintained her personal appearance and hygiene.

15

The ALJ also concluded that Plaintiff had moderate difficulties in social functioning. In reaching this conclusion, the ALJ weighed (1) Plaintiff's subjective complaints of self-isolation, panic attacks, and social anxiety and (2) Dr. Venkatachalapathy's notes that Plaintiff had poor social, interpersonal, and coping skills and poor frustration tolerance against (a) Plaintiff's activities, such as taking public transportation, shopping in stores, and interacting with her family, and (b) the many examinations reporting that Plaintiff was cooperative.

The ALJ also determined that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. Here, the ALJ acknowledged Plaintiff's complaints of poor sleep, difficulty following instructions, poor concentration, and low frustration threshold. He considered that Dr. Goodwin assessed Plaintiff with moderately severe limitations in concentration, persistence, or pace, but noted that other examinations showed normal cognitive functioning, attention, and memory, as well as an absence of inappropriate behavior. Finally, the ALJ found that Plaintiff had experienced no episodes of decompensation of extended duration.

Because Plaintiff's mental impairments did not cause at least two marked limitations, or one marked limitation and repeated episodes of decompensation of extended duration, the Court finds that the ALJ appropriately found that the paragraph B criteria of Listing were not satisfied. In addition, there is no evidence, nor does Plaintiff allege, that she meets the paragraph C criteria for the 12.04 listing.

The ALJ careful considered the evidence, considered the Listings, and gave careful reasoning for his finding at step three of the sequential evaluation process.

With regard to medical opinions, an ALJ is free to choose one medical opinion over another where the ALJ considers all of the evidence and gives some reason for discounting the evidence he rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer*, 186 F.3d at 429 ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.").

The ALJ gave some weight to the opinions of Dr. Venkatachalapathy. In doing so, he explained that the mental status examinations performed by Dr. Venkatachalapathy did not support her assessments of marked and severe limitations or excessive absences. Rather, Plaintiff's examinations were fairly normal and there were no notations of inappropriate behavior, attention deficits, or cognitive deficits. In addition, when considering Plaintiff's RFC, the ALJ made certain it reflected the limitations assessed by Dr. Venkatachalapathy in limiting Plaintiff to simple, unskilled tasks with no fast-pace or strict production requirements and minimal social interaction.

The ALJ gave great weight to the opinions of Dr. Goodwin and, as in the case of Dr. Venkatachalapathy, the ALJ provided detailed explanations for his reasoning. He noted that Dr. Goodwin's opinion was consistent with her examination and that she took into consideration Plaintiff's subjective statements. While he did not adopt a portion of Dr. Goodwin's opinion, he provided a rationale for this. *See Wilkinson v. Commissioner of Social Security*, 558 F. App'x 254, 256 (3d Cir. 2014) ("no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical

source simple because the ALJ gives the source's opinion as a whole 'significant' weight.").

The ALJ considered the medical records as well as the medical opinion evidence and outlined his reasoning in affording weight to the opinions and in determining that Plaintiff has the RFC to perform the full range of work at all exertional levels of work but with the nonexertional limitations of simple, unskilled tasks with no fast pace or strict production requirements in a stable work environment with only occasional changes, occasional interaction with coworkers that does not require teamwork or tandem tasks, and no interaction with the public.   After the VE testified about the demands of Plaintiff's past work as a server at Starbucks, the ALJ found that Plaintiff was unable to perform any past relevant work based upon the VE's testimony.   The ALJ next appropriately relied upon the testimony of the VE in concluding that Plaintiff could perform jobs that exist in significant numbers in the national economy.   Accordingly, the Court finds that substantial evidence supports the ALJ's ruling and his evaluation of Plaintiff's residual functional capacity and his determination that she was not disabled.

## B.   New Evidence

Plaintiff submitted additional medical records to the Appeals Council.   Some of the records were duplicates of those considered by the ALJ, while others were dated after the ALJ's decision.   The evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was erroneous.   *See Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991).

Instead, pursuant to 42 U.S.C. § 405(g), sentence six, this Court may order a remand based upon evidence submitted after the ALJ's decision, but only if the evidence satisfies three prongs: (1) the evidence is new; (2) the evidence is material; and (3) there was good cause why it was not previously presented to the ALJ. *Matthews v. Apfel*, 239 F.3d at 589, 593 (3d Cir. 2001).

Plaintiff has not alleged that remand is warranted under sentence six of 42 U.S.C. § 405(g). Nonetheless, she has submitted 2018 medical records with her brief dated 2018 and she now argues that her condition has worsened, and she suffers from panic attacks.[6] (*See* D.I. 19, 23). The evidence is new and, hence, is not material to her claim for benefits filed on April 29, 2014. "[A]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984); *see also Nieves v. Commissioner of Soc. Sec.*, 198 F. App'x 256, 260, n.3 (3d Cir. 2006) ("Our determination [that the ALJ's decision in 2001 was based on substantial evidence] is in no way swayed by the fact that in October of 2003 an ALJ determined that the petitioner was disabled. As per 42 U.S.C. § 405(g), [the court's] review is limited to the evidence in the record at the time of the 2011 decision of the ALJ and [it is] therefore not required, nor able, to consider this

---

[6] The Court scoured the record and did not find a panic disorder diagnosis. In one instance, Plaintiff provided a history of "panic attacks" to Dr. Venkatachalapathy at her initial visit. In another, Plaintiff provided Dr. Goodwin a history of anxiety attacks once or twice a week.

subsequent ALJ ruling when rendering [its] decision."). In addition, Plaintiff provided no explanation, much less good cause, for her failure to present the records she filed in support of her motion for summary judgment. The Court finds no basis to remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).[7]

## V.     CONCLUSION

For the reasons discussed above, the Court will:   (1) deny Plaintiff's motion for summary judgment (D.I. 18); (2) grant the Commissioner's cross-motion for summary judgment (D.I. 20); and (3) deny as moot Plaintiff's request for hearing (D.I. 26).

A separate order will be entered.

---

[7]Plaintiff has available the option of filing a new application should she believe the new evidence supports an award for disability insurance benefits. *See* 20 C.F.R. § 416.330(b).